UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
LAFAYETTE DIVISION

| | |
|---|---|
| TRUSTEES OF THE INDIANA STATE COUNCIL OF ROOFERS HEALTH AND WELFARE FUND, <br><br>　　　　Plaintiff, <br><br>　　v. <br><br>CAPITAL PAINTING AND COATINGS LLC, AND KELSEY COOK, <br><br>　　　　Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) )   Case No. 4:22-cv-48 |

## OPINION AND ORDER

This matter is before the court on the Motion for Summary Judgment [DE 40] filed by the plaintiffs, the Trustees of the Indiana State Council of Roofers Health and Welfare Fund, on January 31, 2024. For the following reasons, the motion is **GRANTED.**

### *Background*

On July 12, 2022, the plaintiffs, the Trustees of the Indiana State Council of Roofers Health and Welfare Fund ("The Trustees")*,* brought this action against the defendants, Capital Painting and Coatings LLC and Kelsey Cook (collectively "Capital Painting") seeking to recover unpaid fringe benefit contributions under the Employee Retirement Income Security Act of 1974 (ERISA) and the Labor Management Relations Act of 1947 (LMRA).

On January 31, 2024, The Trustees filed the instant motion for summary judgment. [DE 40]. Capital Painting failed to file a response, and the time to do so has passed.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment. As a result, this court has jurisdiction to decide this case pursuant to **28 U.S.C. § 636(c)**.[1]

### *Undisputed Material Facts*

The Trustees are fiduciaries of a Trust Fund created pursuant to LMRA § 302(c)(5), 29 U.S.C. § 186(c)(5). [DE 41, p. 1]. The Trust Fund consists of a Health Fund and Pension Fund as defined under ERISA §§ 3(1)(2) and (37), 29 U.S.C. § 1002(1) and (37). [DE 41, p. 2]. The Pension Fund collects contributions on behalf of several affiliated funds and organizations including the IUPAT Industry Annuity Plan; the Finishing Trades Institute (FTI); the Painters and Allied Trades Labor Management Cooperation Initiative; and the IUPAT Political Action Fund. *Id.*

On June 1, 2021, Capital Painting entered into a Collective Bargaining Agreement (CBA) with the International Union of Painters and Allied Trades, District Council 91. [DE 41, p. 3]. Under the terms of the agreement, Capital Painting was required to make contributions to the Trust Fund managed by The Trustees, as well as contributions to other employee benefit funds, based on the number of hours for which employees received pay. *Id.* Capital Painting also was required to withhold dues from employees' wages and to remit the dues to the Union. *Id.* The agreement specified that contributions that were not paid timely were considered delinquent and subject to liquidated damages and interest. [DE 41, p. 4]. Specifically, the Health Fund could

---

[1] The parties filed their consent to the exercise of jurisdiction by a United States Magistrate Judge in April 2023. [DE 21]. At the time, the case was assigned to Magistrate Judge Joshua P. Kolar.  The case was later reassigned to the undersigned when Magistrate Judge Kolar was confirmed to the 7th Circuit Court of Appeals. Following the reassignment, the parties were notified they had thirty days within which to object to the continued exercise of jurisdiction by a Magistrate Judge [DE 42], and neither party notified the clerk's office it they had any objections.

assess interest at the rate of 1% per month and liquidated damages at the rate of 10% of the amount of the delinquent contributions. *Id.* Similarly, the Pension Fund may assess interest at the rate of 10% per year and liquidated damages at the rate of 20% of the amount of the delinquent contributions. *Id.* The FTI also could assess interest at the rate prescribed under Section 6621 of the Internal Revenue Code and liquidated damages at the rate of 20% of the sum of delinquent contributions. *Id.* Under the terms of the CBA and trust agreements, if a signatory employer, such as Capital Painting, fails to pay contributions timely, the employer is liable for all attorney fees and costs incurred in connection with the collection of the delinquent contributions. *Id.*

On October 19, 2021, Capital Painting was administratively dissolved. [DE 41, p. 5]. Following its dissolution, defendant Kelsey Cook continued to operate the business as a sole proprietor, using the trade name Capital Painting and Coatings. *Id.* A subsequent payroll audit covering the period of June 1, 2021 through December 31, 2022 revealed that Capital Painting was delinquent in its contributions to the Health Fund in the amount of $23,285.60 plus $2,328.56 in liquidated damages and $5,781.55 in accrued interest; the Pension Fund and its affiliates in the amount of $34,093.55 plus $6,818.71 in liquidated damages and $5,296.81 in accrued interest; FTI in the amount of $1,991.24 plus $398.25 in liquidated damages and $126.79 in accrued interest; and the Union in the amount of $3,518.29. Capital Painting has offered no evidence disputing the amounts of unpaid contributions. *Id.*

## *Discussion*

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is proper only if it is demonstrated that "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." ***Celotex Corp. v. Catrett***, 477 U.S. 317, 322–23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); ***Garofalo v. Vill. of Hazel Crest***, 754 F.3d 428, 430 (7th

Cir. 2014); ***Kidwell v. Eisenhauer***, 679 F.3d 957, 964 (7th Cir. 2012); ***Stephens v. Erickson***, 569 F.3d 779, 786 (7th Cir. 2009). A fact is material if it is outcome determinative under applicable law. The burden is upon the moving party to establish that no material facts are in genuine dispute, and any doubt as to the existence of a genuine issue must be resolved against the moving party. ***Adickes v. S.H. Kress & Co.***, 398 U.S. 144, 160, 90 S. Ct. 1598, 1610, 26 L. Ed. 2d 142, 155 (1970); ***Stephens***, 569 F.3d at 786. If the non-movant bears the ultimate burden of persuasion on an issue at trial, the requirements are not as onerous for the moving party. ***Modrowski v. Pigatto***, 712 F.3d 1166, 1168 (7th Cir. 2013). Under this circumstance, the moving party can either come forward with affirmative evidence negating an element of the opponent's claim or by asserting that the nonmoving party has insufficient evidence to succeed on its claim. ***Modrowski***, 712 F.3d at 1169.

Summary judgment may be entered against the non-moving party if it "is unable to 'establish the existence of an essential element to [the party's] case, and on which [that party] will bear the burden of proof at trial . . . .'" ***Kidwell***, 679 F.3d at 964 (quoting ***Benuzzi v. Bd. of Educ.***, 647 F.3d 652, 662 (7th Cir. 2011) (quoting ***Celotex***, 477 U.S. at 322)). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." ***Blythe Holdings, Inc. v. DeAgnelis***, 750 F.3d 653, 656 (7th Cir. 2014) (quoting ***Anderson v. Liberty Lobby***, 477 U.S. 242, 247–48, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). The non-moving party must show specific facts that create a genuine issue for trial. ***Blythe***, 750 F.3d at 656.

In deciding a motion for summary judgment, the trial court must determine whether the evidence presented by the party opposed to the summary judgment is such that a reasonable jury might find in favor of that party after a trial. ***Anderson***, 477 U.S. at 248; ***Cung Hnin v. Toa,***

*LLC*, 751 F.3d 499, 504 (7th Cir. 2014); *Stephens*, 569 F.3d at 786; *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008).

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party. . . . [T]his standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict.

*Anderson*, 477 U.S. at 250; *see* *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 149–51, 120 S. Ct. 2097, 2109, 147 L. Ed. 2d 105, 120–22 (2000) (setting out the standard for a directed verdict); *Celotex*, 477 U.S. at 322–23; *Stephens*, 569 F.3d at 786; *Argyropoulos v. City of Alton*, 539 F.3d 724, 732 (7th Cir. 2008) (stating that a genuine issue is one on which a reasonable fact finder could find for the nonmoving party); *Springer v. Durflinger*, 518 F.3d 479, 483 (7th Cir. 2008) (stating that a genuine issue exists and summary judgment is inappropriate if there is sufficient evidence for a jury to return a verdict for the nonmoving party). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Blythe*, 750 F.3d at 656 (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)).

The Trustees have brought this action under ERISA and the LMRA. Pursuant to § 515 of ERISA,

> [e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

**29 U.S.C. § 1145**.

5

A fiduciary may bring a civil action to obtain appropriate equitable relief to redress a violation under ERISA or the terms of a plan. **29 U.S.C. § 1132(a)(3)**. A multiemployer plan is a fiduciary under section 1132(e). *Line Const. Benefit Fund v. Allied Elec. Contractors, Inc.*, 591 F.3d 576, 579 (7th Cir. 2010) (citing *Auto. Mechs. Local 701 Welfare & Pension Funds v. Vanguard Car Rental USA, Inc.*, 502 F.3d 740, 744–745 (7th Cir. 2007)).

Under § 301 of the LMRA, a labor organization may sue an employer to enforce monetary obligations pursuant to the parties' CBA. *DeLange v. Banks Design, Inc.*, 2010 WL 405981, at *5 (N.D. Ind. Jan. 27, 2010) (citing *Jim McNeff, Inc. v. Todd*, 461 U.S. 260, 269, 103 S. Ct. 1753, 75 L. Ed. 2d 830 (1983)); *see* **29 U.S.C. § 185**.

Here, there is no dispute that Capital Painting signed and was a party to a CBA that required it to make monthly contributions as defined above. Cook was the owner of Capital Painting at the time the parties entered into the CBA and signed the agreement on its behalf. Although Capital Painting administratively dissolved in 2021, Cook continued to operate the business as a sole proprietor using the trade name Capital Painting and Coatings. As a successor employee, Cook became bound to the CBA. "[S]uccessor entities can be liable for multiemployer pension contributions if (1) there is sufficient continuity between the two companies and (2) the successor company had notice of the predecessor's liability." *Moriarty v. Svec*, 164 F.3d 323, 327 (7th Cir. 1998). Here, Cook continued to operate the business in substantially the same form and, as its former owner, clearly had notice of Capital Paintings liability.

The Trustees presented an audit report calculating the damages owed pursuant to **29 U.S.C. § 1132(g)(2)**, which Capital Painting failed to rebut. The Seventh Circuit has held that when a plaintiff presents an audit report that is uncontradicted by the defendant's records, the

burden is on the defendant to establish a genuine issue of material fact barring summary judgment. *See* **Laborer's Pension Fund v. RES Environmental Services, Inc.**, 377 F.3d 735, 738-39 (7th Cir. 2004) citing (**Chicago Dist. Council of Carpenters Pension Fund v. Reinke Insulation Co.**, 347 F.3d 262, 265 (7th Cir. 2003); **Laborers' Pension Fund v. A & C Envtl.**, 301 F.3d 768, 783 (7th Cir. 2002).

The audit report determined that Capital Painting failed to pay $62,888.68 to all of the Funds, FIT, and Union, from June 1, 2021 through December 31, 2022. Under **29 U.S.C. § 1132(g)(2)**, a multiemployer plan that is awarded a judgment under § 515 of ERISA is entitled to the following:

> In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan—
>
> (A) the unpaid contributions,
> (B) interest on the unpaid contributions
> (C) an amount equal to the greater of--
>   i. interest on the unpaid contributions, or
>   ii. liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant,
> (E) such other legal or equitable relief as the court deems appropriate
>
> For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26.

**29 U.S.C. § 1132(g)(2).**

The total amount of liquidated damages is $9,545.52 (20% of the contributions amounts listed in the audit report for the Health Fund, Pension Fund, and FTI) and the accrued interest is $11,205.15[2]. The audit cost was $2,964.74.

### *Conclusion*

Based on the foregoing reasons, the Trustees' Motion for Summary Judgment [DE 40] is **GRANTED.** The Clerk is **INSTRUCTED** to enter judgment in favor of the Trustees in the amount of $86,604.09.

As a result of this order, the defendant's motion to withdraw [DE 45] filed on March 25, 2024 is **DENIED as moot**.

ENTERED this 16th day of April, 2024.

/s/ Andrew P. Rodovich
United States Magistrate Judge

---

[2] Amount calculated as of February 1, 2024 for the Health Fund and FTI and as of January 24, 2024 for the Pension Fund.